**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X

THIRD AVENUE COMMONS LLC,

          *Plaintiff,*

          -against-

GOBRANDS, INC., *doing business as* GOPUFF,

          *Defendant.*
--------------------------------------------------------------X

**FILED**
**CLERK**

**2/26/2026**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM**
**AND ORDER**

25-cv-00934 (EK) (JMW)

**A P P E A R A N C E S:**

Mehrdad Kohanim
**Law Office of Mehrdad Kohanim**
100 Quentin Roosevelt Blvd, Suite 106
Garden City, NY 11530
*Attorney for Plaintiff*

Michael Timothy Carr
**Akerman LLP**
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
*Attorney for Defendant*

**WICKS,** Magistrate Judge:

Plaintiff Third Avenue Commons LLC ("Plaintiff") commenced this action[1] seeking to

collect unpaid rent, operating expenses, insurance expenses, and utility charges from Defendant

GoBrands Inc. ("Defendant") in the amount of $356,191.51 based on Defendant's purported

---

[1] Plaintiff initially brought this lawsuit on December 20, 2024 in the New York State Supreme Court, County of Nassau, and timely removed the case to this Court on the basis of diversity of citizenship on February 18, 2025. (*See* ECF No. 1 at pp. 1-3.)

1

breach of a written lease agreement ("Agreement") governing the building located at 2202 Third

Avenue, New York, NY 10035 ("Premises"). (ECF No. 1-2 at ¶¶ 5, 13-17, 19.)

The parties are before the Court on Defendant's motion to amend its Answer (ECF No. 6)

to assert a counterclaim for the breach of the implied covenant of good faith and fair dealing

based on Plaintiff's alleged acts of intentionally not holding Defendant in default after it failed to

pay rent due under the Agreement in order to avoid the impact of a damages-limitation provision

in the Agreement. (*See* ECF No. 31; ECF No. 31-1.) Defendant contends its motion to amend

was made based on information it learned during Plaintiff's November 19, 2025 document

production and during the 30(b)(6) deposition of Plaintiff's representative taken on December

19, 2025. (ECF No. 31-1.) Plaintiff vehemently opposes Defendant's motion. (*See* ECF No. 34.)

For the reasons stated below, Defendant's motion to amend (ECF No. 31) is

**GRANTED**.[2]

## BACKGROUND

Plaintiff entered into the Agreement with Defendant on October 12, 2021 for a term of

ninety months. (ECF No. 1-2 at ¶¶ 5-6.) Pursuant to the Agreement, Defendant was required to

pay all real property taxes, Plaintiff's insurance expenses relating to the Premises, operating

expenses incurred by Plaintiff in connection with the Premises, and late fees if any payment to

Plaintiff is not received in a timely manner. (*Id.* at ¶¶ 8-11.) According to Plaintiff, Defendant

failed to pay rent since February of 2024, failed to pay water charges at the Premises since

---

[2] The courts within this Circuit generally approach motions to amend as dispositive if denied but non-dispositive if granted. *See e.g., Pusepa v. Annucci*, No. 17-CV-7954 (RA) (OTW), 2024 WL 4579450, at *1 (S.D.N.Y. Oct. 25, 2024) ("A magistrate judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive."); *Portelos v. City of New York*, No. 12 Civ. 3141 (RRM) (VMS), 2015 WL 5475494, at *1 (E.D.N.Y. Sept. 15, 2015) ("[D]istrict courts in this circuit have generally found that denial of a motion to amend is dispositive, whereas granting a motion to amend is non-dispositive."). Accordingly, because the motion is granted, the Court proceeds by Memorandum and Order rather than Report and Recommendation.

October 20, 2022, failed to pay tax charges for the Premises for the 2024-25 tax year, and failed to pay operating and insurance expenses at the Premises incurred by Plaintiff. (*Id.* at ¶¶ 13-17.) As such, Plaintiff's action seeks to recover all sums due pursuant to the Agreement. (*See id.* at ¶¶ 19-21.)

Defendant filed its Answer to the Complaint on February 25, 2025. (ECF No. 6.) Shortly thereafter, the parties appeared for an Initial Conference before the undersigned on April 24, 2025 where the parties requested a settlement conference. (ECF No. 13.) As such, the undersigned held the discovery scheduling order in abeyance pending the outcome of the settlement conference. (*Id.*) Following the Settlement Conference on June 24, 2025, the undersigned directed that all fact discovery be completed by November 14, 2025 and that all remaining dates would be set at a later Status Conference. (Electronic Minute Order dated June 24, 2025.) At the November 7, 2025 Status Conference, the undersigned set the following dates and deadlines:

> Completion of all fact discovery by December 31, 2025; Identification of case-in-chief experts and service of Rule 26 disclosures by January 30, 2026; Identification of rebuttal experts and service of Rule 26 disclosures by February 27, 2026; Close of all discovery, including expert discovery, by March 20, 2026; and the final date by which parties shall take the first step of summary judgment motion practice is April 17, 2025.

During the course of discovery, Defendant served Plaintiff with combined discovery demands on September 9, 2025. (ECF No. 31-2, Carr Decl. at ¶ 6; ECF No. 31-3.) The demands included document demands seeking, *inter alia*, "[a]ll Documents and Communications Relating to any notices sent by [Plaintiff] to [Defendant], including, but not limited to: (i) notices of default, (ii) late payment notices, (iii) notices of any violations of the Lease, and (iv) any other notices under the Lease." (ECF No. 31-3 at p. 12.) The demands additionally included

3

interrogatories that asked Plaintiff to, *inter alia*, "[i]dentify all demands or notices of default that Plaintiff sent to Defendant relating to any alleged breaches of the Lease Agreement, including the date of each notice, method of delivery, recipient, and substance of each notice." (*Id.* at p. 16.)

On November 19, 2025, Plaintiff produced over 16,000 pages of documents in response to Defendant's demand. (*See* ECF No. 31-2, Carr Decl. at ¶¶ 8-9.) Plaintiff's November 19, 2025 production included, in relevant part, an email dated January 6, 2023 written from Melody Malekan, one of Plaintiff's representatives, to Jennifer Connors, another of Plaintiff's representatives, wherein Melody Malekan stated that "WE CANNOT HOLD [DEFENDANT] IN DEFAULT BECAUSE THEN OUR ABILITY TO COLLECT FROM THEM WILL BE LIMITED." (ECF No. 31-4) (emphasis in original). One month later, on December 19, 2025, Defendant took the deposition of Manouchehr Malekan, Plaintiff's 30(b)(6) representative. (*See* ECF No. 31-5.) Manouchehr Malekan testified that despite Defendant not making the required rent payments under the Agreement, Plaintiff did not put Defendant on default because Plaintiff wanted to collect additional rent from Defendant. (ECF No. 31-5, Malekan Dep. Tr. at 46:5-18 ("We know we can collect our rent so we go and act on collecting our rent. So we did not put them on default. They haven't been paying but we are aware of what the lease terms are so we did not put GoBrands on default.")).

Eleven days later, on December 30, 2025, Defendant filed a letter requesting a conference to discuss, *inter alia*, Defendant's intention to seek leave to amend its Answer and assert a counterclaim for breach of the implied covenant of good faith and fair dealing based on the information from Plaintiff's November 19, 2025 document production and December 19, 2025 30(b)(6) deposition. (*See* ECF No. 27; *see also* ECF No. 31-2, Carr Decl. at ¶ 14.) During the

4

conference before the Court on January 8, 2026, the following deadlines were set for Defendant's motion to amend: "Defendant's Motion to Amend its Answer to assert a counterclaim, shall be filed on or before January 16, 2026. Plaintiff's opposition is to be filed on or before January 28, 2026. Defendant's reply is to be filed and served on or before February 6, 2026." Defendant timely filed its motion on the deadline set by the Court—January 16, 2026. (ECF No. 31.) Plaintiff opposed on January 28, 2026 (ECF No. 34) and Defendant filed its reply on February 6, 2026. (ECF No. 36.)

## THE LEGAL FRAMEWORK

Motions to amend pleadings are governed by the Federal Rule of Civil Procedure 15(a). Pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave when justice so requires." *Bongiovanni v. PennyMac Corp.*, No. 19-CV-3260 (EK) (VMS), 2021 WL 1193043, at *8 (E.D.N.Y. Mar. 30, 2021). Generally, "[u]nless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Commc'ns Co.*, *Inc. v. Best Yet Mkt., Inc.*, No. 17-CV-02987 (ADS) (ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). The party opposing the proposed amended pleading has the burden of establishing that amendment would be prejudicial or futile. *Jipeng Du v. Wan Sang Chow*, No. 18-CV-01692 (ADS) (AKT), 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019). However, the burden to explain the delay rests with the movant. *Pilkington N. Am., Inc. v. Misui Sumitomo Ins. Co. of Am.*, No. 18 Civ. 8152 (JFK), 2021 WL 4991422, at *5 (S.D.N.Y. Oct. 27, 2021). The moving party must attach the proposed amended pleading to the motion, as was done here, specifying the new claims and/or parties intended to be added. (*See* ECF No. 31-7 (indicating the

proposed amendments in track changes)); *Ghaly v. Nissan Motor Acceptance Corp.*, No. 21-cv-01613 (JS) (JMW), 2021 WL 2550389, at *1 (E.D.N.Y. June 22, 2021).

Courts typically evaluate a motion to amend an answer to assert counterclaims under Rule 15's mandates. *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 100 (2d Cir. 2019) (noting that when presenting a new counterclaim as part of amending an answer, the court will consider the application under Rule 15); *see also Fossil Grp., Inc. v. Angel Sellers LLC*, No. 20-CV-2441 (WFK) (TAM), 2021 WL 5409605, at *8 (E.D.N.Y. Aug. 27, 2021) (analyzing defendant's individual counterclaims it sought to amend its answer to include under Rule 15's futility and prejudice standards). Indeed, when evaluating the merits of a motion to amend an answer, courts need not consider Rule 13's distinction between permissive and compulsory counterclaims. *See GEOMC Co*, 918 F.3d at 100, n.11 (noting that while evaluating a motion to amend to add new counterclaims there was "no need to consider Rule 13's distinction between compulsory and permissive counterclaims"); *see also* Fed. R. Civ. P. 15 advisory committee's note to 2009 amendment (indicating "[a]brogation of Rule 13(f) establishes Rule 15 as the sole rule governing amendment of a pleading to add a counterclaim"); *see also* Fed. R. Civ. P. 13 advisory committee's note to 2009 amendment (stating that "[a]n amendment to add a counterclaim will be governed by Rule 15"); *see also Ramsay-Nobles v. Keyser*, No. 16 CIV. 5778 (CM), 2018 WL 6985228, at *3 (S.D.N.Y. Dec. 18, 2018) (finding that the "Committee made it very clear that Rule 15 is intended to govern whether a counterclaim can be added to an amended pleading").

Rule 15(a)(2)'s period of "liberal" amendment ends upon expiration of the date set by the court as the deadline after which no amendment will be permitted. *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021); *United Specialty Ins. Co. v. LIC Contracting, Inc.*, No. 17-CV-

6

5736 (EK) (VMS), 2024 WL 2815977, at *5 (E.D.N.Y. June 2, 2024). At that point, Rule 16 also applies, and a court must balance the "liberal" amendment standard of Rule 15 with Rule 16(b)(4)'s requirement that the plaintiff show "good cause" for an extension of the deadline to amend. *See* Fed. R. Civ. P. 16(b)(4); *see also Pugh v. Casimir*, No. 18-CV-7350 (EK) (RLM), 2021 WL 4463103, at *16 (E.D.N.Y. Sept. 29, 2021) (applying Rule 16 where the request to amend came "long after" the deadline to amend set by the court); *see also Pasternack v. Shrader*, 863 F.3d 162, 174 n.10 (2d Cir. 2017) (determining that plaintiff must satisfy both Rules 15 and 16 to be permitted to amend after the deadline in the scheduling order has passed).

Since Defendant's motion was made before the deadline to amend had passed Rule 16 need not be satisfied. The Court did not enter a discovery schedule at the Initial Conference on April 24, 2025 because the parties requested a settlement conference. (*See* ECF No. 13.) Following an unsuccessful settlement conference on June 24, 2025, the undersigned advised the parties that "all fact discovery shall be completed by November 14, 2025" with the "remaining discovery dates and deadlines" to be set during a later Status Conference. (Electronic Orders dated June 24, 2025 and October 21, 2025.) At the November 7, 2025 Status Conference, the undersigned set numerous discovery deadlines but did not set a deadline for amending the pleadings.  It was not until January 8, 2026 when the undersigned set January 16, 2026 as the deadline for Defendant to file its motion to amend its Answer. Defendant filed its motion on January 16, 2026, thus the Court will analyze Defendant's motion to amend its Answer to assert a counterclaim solely by the more liberal Rule 15 standard. *See Khan v. K1 Investment Mgmt. LLC*, No. 2:24-cv-07860 (JMW), 2025 WL 1808725, at *3 (E.D.N.Y. July 1, 2025) (applying Rule 15 to defendant's motion to amend its answer to assert a counterclaim that was made "before the deadline to amend" had passed).

## DISCUSSION

Defendant seeks leave to amend its Answer to assert one counterclaim for breach of the implied covenant of good faith and fair dealing. (*See* ECF No. 31; ECF No. 31-1.) In its proposed counterclaim, Defendant argues that the Agreement provides that an Event of Default occurs where, *inter alia*, the tenant does not pay rent when due and such failure continues for five days following written notice by the landlord of such failure. (ECF No. 31-7 at ¶ 69 (citing ECF No. 1-2, Agreement at 10(a))). The Agreement further provides that "[i]n the event of any Event of Default, Landlord at any time thereafter may exercise" several remedies, one of which being the right to terminate the Agreement. (*Id.* at ¶ 70 (citing ECF No. 1-2, Agreement at 11(a)(i))). The Agreement also states that "Landlord shall use commercially reasonable efforts to mitigate its damages due to an Event of Default." (*Id.* at ¶ 71 (citing ECF No. 1-2, Agreement at 11(a)(i))). Defendant furthers that Section 11(b) of the Agreement provides that:

> No expiration or termination of this Lease term pursuant to this Section 11 above or by operation of law or otherwise, shall relieve Tenant of its liabilities and obligations hereunder accruing prior to such termination, all of which shall survive such expiration, termination or repossession. Notwithstanding anything to the contrary in this Lease, after a termination of this Lease or repossession of the Premises, under no circumstances shall Landlord be permitted to collect as damages from Tenant a total amount in excess of one (1) year's Fixed Rent under this Lease at the rates in effect at the time of such termination or repossession.

(*Id.* at ¶ 72 (citing ECF No. 1-2, Agreement at 11(b))).

In accordance with these provisions, Defendant seeks to now include information relating to how Plaintiff intentionally refused to send Defendant a written notice of Defendant's failure to pay rent and refused to hold Defendant in default all to avoid the effect of the damages-limiting provision in the Agreement in order to collect additional payments from Defendant. (*See* ECF No. 31-1 at pp. 9-10; *see also* ECF No. 31-7 at pp.

8

8-12.) Indeed, Defendant maintains that Plaintiff has refused to make any effort to mitigate any damage it has incurred and has willfully circumvented the damages-limiting provision, despite these provisions being "specifically bargained for" amongst the parties under the Agreement. (*See* ECF No. 31-7 at ¶¶ 77, 79-80.) As such, "Plaintiff has intentionally deprived Defendant of the benefit of its bargain by preventing Defendant from benefitting from the provisions of the Lease that would limit Defendant's damages in the Event of Default . . . ." (*Id.* at ¶¶ 82, 86.)

Defendant not only contends that the counterclaim would not be futile but also argues that the motion was timely as the information underlying the amendment was uncovered during discovery and that Plaintiff would not be prejudiced by the addition of one counterclaim. (*See* ECF No. 31-1 at pp. 8, 10, 11.) Conversely, Plaintiff avers that the amendment is futile in that it "seeks to manufacture contractual obligations that do not exist under the [Agreement]," the amendment is untimely and made in bad faith, and the amendment is "highly prejudicial" considering the need to expend "additional costs and expenses" and "expand the scope" of this action. (*See* ECF 34 at p. 4.)

### i. <u>Undue Delay</u>

"Mere delay ... absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Khan*, 2025 WL 1808725, at *3 (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)) (citation omitted); *see also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (emphasizing prejudice and bad faith over delay). Although mere delay is insufficient to deny a motion to amend, the moving party has the burden to "provide satisfactory explanation for the delay." *De la Gandara v. Soriano*, No. 25-CV-02242 (FB) (JMW), 2025 WL 3228080, at *2 (E.D.N.Y. Nov. 19, 2025) (quoting *United States v. Inc.*

*Village of Island Park*, No. CV-90-0992, 1995 WL 669936, at *1 (E.D.N.Y. Nov. 6, 1995)). Ordinarily, where the moving party fails to provide a detailed explanation as to why the proposed amendments could not have been alleged previously, a court will assume there was undue delay. *Perez v. Escobar Construction, Inc.*, 342 F.R.D. 378, 381-82 (S.D.N.Y. 2022).

Here, the facts underlying Defendant's proposed counterclaim relate to Plaintiff's "willful disregard of the terms of the [Agreement]," specifically paragraph 11(b) which caps the amount Plaintiff can collect from Defendant following Defendant's default in addition to Plaintiff's refusal to mitigate any damages it claims to have incurred from Defendant's breach. (*See* ECF No. 31-7 at ¶¶ 62-64, 74-75, 81-82.) While Plaintiff's argument that Defendant was aware of these facts before the commencement of this action (*see* ECF No. 34 at p. 7), such an argument fails to take into account that Defendant was not aware of the alleged intentions or motivations behind Plaintiff's actions—those that form the basis of the proposed amendment—until the current discovery process. Indeed, it was not until Defendant received Plaintiff's document production on November 19, 2025 and during the December 19, 2025 deposition that Defendant realized more about the intentions and motivations behind Plaintiff's actions. (*See* ECF No. 31-1 at pp. 5-7.)

Like here, "[w]here the information underlying the proposed amendments was learned of during discovery, and the movant filed its motion to amend shortly thereafter, courts will find no undue delay." *See Khan*, 2025 WL 1808725, at *4 (granting the motion to amend where the facts underlying the amendment were uncovered "during the [] discovery process of Plaintiff's breach of contract claim"); *see also Friedl v. City of New York*, 210 F.3d 79, 88 (2d Cir. 2000) (remanding to allow leave to amend where, *inter alia*, "there has been no showing of either undue delay, given that the amendment was proposed only after discovery revealed additional

relevant facts . . . ."); *see also Enzymotec Ltd v. NBTY, Inc.*, 754 F. Supp. 3d 527, 538 (E.D.N.Y. 2010) (finding the motion to amend timely because plaintiff learned of the alleged breaches of contract during discovery and shortly before filing its motion); *see also SIGN PRO, Inc. v. Town of Southington*, No. 3:23-cv-651 (SRU), 2025 WL 1753660, at *2 (D. Conn. June 25, 2025) (rejecting a claim of undue delay where "it was the discovery process" that revealed information relevant to the existing claims).

In addition, Defendant sought a pre-motion conference to discuss seeking leave to amend its Answer based on this newly discovered information on December 30, 2025—less than two weeks after the 30(b)(6) deposition. Courts routinely find that similar timeframes do not constitute undue delay under Rule 15. *See United States Regional Economic Development Authority, LLC v. Matthews*, No. 3:16-cv-01093 (CSH), 2017 WL 5992384, at *5 (D. Conn. Dec. 4, 2017) (determining that plaintiff's motion seeking leave to file a motion to amend "within two weeks following the deposition of defendants" was not made with undue delay under Rule 15); *Cherotti v. Exphand, Inc.*, No. 20 Civ. 11102 (SLC), 2022 WL 2108604, at *7 (S.D.N.Y. June 10, 2022) (holding that no undue delay existed where the movant sought leave to amend "two weeks after the Motion to Dismiss was fully briefed, and where the case, despite pending for nearly a year and a half, is still in the discovery stage"). Accordingly, no undue delay exists.

### ii. **Bad Faith**

"While not much case law exists in this Circuit about what constitutes bad faith for the purposes of denying a motion for leave to amend a pleading, a finding that a party is seeking leave to amend solely to gain a tactical advantage supports a finding that such an amendment is made in bad faith." *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388 (JFB) (SIL), 2017 WL 3841841, at *5 (E.D.N.Y. Aug. 4, 2017), *report and recommendation adopted*, 2017 WL

11

3842350 (E.D.N.Y. Aug. 31, 2017) (internal quotation marks omitted) (citation omitted). The burden is on the party opposing the amendment to establish bad faith. *Contrera v. Langer*, 314 F. Supp. 3d 562, 567 (S.D.N.Y. 2018) ("While the party seeking to amend its pleading must explain any delay, the party opposing the amendment 'bears the burden of showing prejudice, bad faith, and futility of the amendment.'") (citations omitted).

Here, while Defendant argues its motion was "brought in good faith" (ECF No. 31-1 at p. 8), Plaintiff counters that the motion was "brought in bad faith more than a year after the action was started and after the expiration of the fact discovery deadline . . . ." (ECF No. 34 at p. 4.) Plaintiff fails to explain how this circumstance amounts to bad faith. Such conclusory statements made by the party opposing the amendment fall far short of satisfying its burden to establish bad faith sufficient to defeat a motion to amend. *See Khan*, 2025 WL 1808725, at *5; *see also Jipeng Du. v. Wan Sang Chow*, 18-cv-1692 (ADS) (AKT), 2019 WL 3767536, at *5 (E.D.N.Y. Aug. 9, 2019) (collecting cases illustrating that "a party does not demonstrate that a movant seeks to amend in bad faith with conclusory allegations"). As such, Plaintiff has not carried its burden in proving that bad faith exists.

### iii.    Prejudice

Prejudice to the nonmovant is an important factor when determining whether to grant a claimant's leave to amend and is often the "most frequent reason for denying leave to amend." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008). When considering whether the opposing party may be prejudiced, courts consider whether the new claim would: "(1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350; *see Alekperova v. Interfaith Med.*

*Ctr.*, No. 04-CV-202, 2006 WL 8439666, at *4 (E.D.N.Y. Aug. 8, 2006) ("[P]rejudice must take the form of increasing the non-movant's costs, surprising the non-movant with new allegations or claims, or delaying or prolonging the trial."). The party opposing the amendment "bears the burden of showing prejudice . . . of the amendment." *Williams v. Epic Sec. Corp.*, 358 F. Supp. 284, 293-94 (S.D.N.Y. 2019).

As the party bearing the burden to show prejudice, Plaintiff maintains that this amendment would be "highly prejudicial" due to the "substantial additional costs and expenses including attorneys' fees" and need to "expand the scope of this Action and require extensive additional discovery and needlessly prolong its resolution." (ECF No. 34 at p. 4.) These arguments are unconvincing.

Here, the close of all discovery was recently extended to May 22, 2026 (ECF No. 37), expert reports have not been submitted (Electronic Order dated February 24, 2026), the Final Pre-Trial Conference and the filing of a proposed Joint Pre-Trial Order ("JPTO") "remain held in abeyance due to the parties' representations that one or both sides may file a Motion for Summary Judgment before the Hon. Eric Komitee" (Electronic Order dated January 8, 2026), and no trial date has been set. Under these circumstances, Plaintiff would not be prejudiced by Defendant's counterclaim. *See AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 321, 342 (S.D.N.Y. 2024) (noting plaintiff would not be prejudiced by the addition of defendant's proposed counterclaims where the parties had not "exchanged expert reports, or filed motions for summary judgment" and the close of all discovery was in a few months after the motion to amend was filed); *see also Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 176 (S.D.N.Y. 2014) (granting defendant's motion to amend after finding no undue prejudice to plaintiff where, at the time the motion to amend was filed, expert reports were not

13

exchanged, no motions for summary judgment were pending, and several months remained before discovery closed).

Moreover, the facts underlying Defendant's proposed counterclaim relate solely to Defendant's initial breach of the Agreement—the entire basis behind Plaintiff's lawsuit. As such, adding this counterclaim would not "significantly expand" the scope of this litigation or result in "new problems of proof" for Plaintiff. *Khan*, 2025 WL 1808725, at *6; *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 192 (2d Cir. 2008) ("Undue prejudice arises when an amendment comes on the eve of trial and would result in new problems of proof."); *see also Blake Marine Grp., LLC v. Frenkel & Co.*, 425 F. Supp. 3d 330, 335 (S.D.N.Y. 2019) (permitting defendant to amend its answer where, *inter alia*, discovery was ongoing, a trial date had not been set, and "any additional discovery that may be required will likely overlap with the discovery that is already underway").

Additionally, discovery into Defendant's sole proposed counterclaim, if any, would be minimal and not unduly burdensome. Defendant's proposed amendment is based on circumstances already within Plaintiff's sole control—Plaintiff's intentions and motivations behind not holding Defendant in default under the Agreement—and stems from information that Plaintiff has *already produced* during document production and has *already been elicited* during the 30(b)(6) deposition. Further, "Defendant does not seek additional discovery in relation to the proposed Answer and Counterclaim." (ECF No. 31-2, Carr Decl. at ¶ 18.) Should Plaintiff, therefore, wish to conduct discovery relating to this proposed counterclaim, it has ample time to do so considering discovery closes on May 22, 2026. (*See* ECF No. 37.) Plaintiff has not carried its burden in establishing, nor can the Court ascertain, how the insertion of one counterclaim for breach of the covenant of good faith and fair dealing, which is based on limited information

14

within Plaintiff's control, would "expand[] the scope of the case, and delay[] resolution of an action that is otherwise postured for adjudication." (ECF No. 34 at p. 9); *see Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 455 (S.D.N.Y. 2016) (determining the non-movants failed to carry their burden in proving the amendment would unduly prejudice them as the "new claim" substantially overlapped with, and related to, plaintiff's existing claims). Accordingly, this factor weighs in favor of granting Defendant's motion to amend.

### iv.    Futility

An amendment is futile if the proposed claim could not withstand a motion to dismiss under Fed. R. Civ. P. § 12(b)(6). *De la Gandara*, 2025 WL 3228080, at *4 (citing *IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland PLC*, 783 F.3d 383, 389 (2d Cir. 2015)); *Bongiovanni*, 2021 WL 1193043, at *8. The party opposing the amendment bears the burden of proving futility. *Khan*, 2025 WL 1808725, at *6 (citing *FC Online Marketing, Inc. v. Burke's Martial Arts*, LLC, No. 14-CV-03685 (SJF) (SIL), 2016 WL 11481193, at *7 (E.D.N.Y. Sept. 30, 2016)). As such, when a party objects to a motion to amend on futility grounds, "the moving party must merely show that it has at least colorable grounds for relief." *Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 Civ. 1608, 2010 WL 1327921, at *3 (S.D.N.Y. Apr. 5, 2010) (internal quotation marks omitted).

"Under New York Law, there is an implied covenant of good faith and fair dealing attendant to all contracts." *Khan*, 2025 WL 1808725, at *10 (citing *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995) ("Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance")); *see also 511 West 232nd Owners Corp v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002). To state a claim for breach of this covenant, a plaintiff must plead that: (1) the defendant owes the plaintiff a duty to act in good

15

faith and conduct fair dealing, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages. *Great Lakes Reinsurance (UK) SE v. Herzig*, 413 F. Supp. 3d 177, 183 (S.D.N.Y. 2019) (cleaned up) (citation omitted). "Broadly stated, the implied covenant 'embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract' " *Singh v. City of New York*, 217 N.E.3d 1, 5 (N.Y. 2023) (quoting *Jennifer Realty Co.*, 773 N.E.2d at 500); *see also Burton v. Label, LLC*, 344 F. Supp. 3d 680, 696 (S.D.N.Y. 2018) (noting the implied covenant encompasses "any promises which a reasonable person in the position of the promisee would be justified in understanding were included.") (citation omitted).

"[T]he duty of good faith and fair dealing is violated 'when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under the agreement.'" *Oscar de la Renta, Ltd. v. Mulberry Thai Silks, Inc.*, No. 08 Civ. 4341 (RJS), 2009 WL 1054830, at *5 (S.D.N.Y. Apr. 17, 2009) (quoting *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1999)). Notably, a cause of action for breach of an implied covenant of good faith and fair dealing "requires the pleading of intent by the breaching party to deprive the injured party of his rights under the contract." *Schroeder v. Capital One Fin. Corp.*, 665 F. Supp. 2d 219, 226 (E.D.N.Y. 2009); *see Dweck Law Firm v. Mann*, 340 F. Supp. 2d 353, 358 (S.D.N.Y. 2004) (implied covenant of good faith and fair dealing prohibits contracting parties from "intentionally" doing anything "to prevent the other party from carrying out his part of the agreement") (citation omitted).

Plaintiff bears the burden of establishing futility of the proposed amendment. The argument advanced is that the counterclaim fails because no provision in the Agreement governs

16

the type of implied promise that Defendant cites to nor does the Agreement mandate Plaintiff to terminate the lease upon an Event of Default. (*See* ECF No. 34 at pp. 7-9, 12.)

Here, Defendant's proposed counterclaim asserts that the parties entered into the Agreement wherein Plaintiff's ability to recover damages from Defendant following an Event of Default would be subject to a damages-limiting provision. (*See* ECF No. 31-7 at ¶¶ 63, 75.) The proposed counterclaim further states that Plaintiff *intentionally* refused to hold Defendant in default to avoid the damages-limiting provision and in order to collect additional payments from Defendant, thereby also running afoul to Plaintiff's duty to mitigate listed under the Agreement as well. (*Id.* at ¶¶ 74, 75, 82, 85.) Defendant also maintains that Plaintiff *intentionally* chose not to send Defendant a written notice of its alleged failure to not pay rent and *intentionally* chose not to treat the failure to pay rent as an Event of Default, both for the end goal of circumventing the damages-limiting provision. (*See id.* at ¶¶ 74-75, 82, 85.) According to Defendant, Plaintiff's actions "deprived Defendant of the fruits of the bargain" and "benefit of its bargain" under the Agreement. (*Id.* at ¶¶ 82, 86.) Consequently, Defendant maintains that Plaintiff's breach of the implied covenant has forced Defendant to incur monetary damages "by being charged by Plaintiff amounts in excess of the amounts permitted under the [Agreement] in the Event of Default". (ECF No. 31-7 at ¶¶ 64-65, 87.)

These allegations taken together –and assumed true for purposes of the proposed amendment -- demonstrate that Plaintiff intentionally and willfully sought to withhold multiple bargained-for-benefits from Defendant under the Agreement which resulted in monetary damages to Defendant. *See Evans v. Select Portfolio Servicing, Inc.*, No. 18-CV-5985 (PKC) (SMG), 2020 WL 5848619, at *16 (E.D.N.Y. Sept. 30, 2020) ("Ordinarily, the covenant of good faith and fair dealing is breached where a party has complied with the literal terms of the

contract, but has done so in a way that undermines the purpose of the contract and deprives the other party of the benefit of the bargain.") (citation and quotations omitted); *see also Taco, Inc. v. American Home Assurance Company*, No. 24-CV-07041 (JAV), 2025 WL 2419707, at *5 (S.D.N.Y. Aug. 21, 2025) (finding the implied covenant of good faith and fair dealing claim meritorious because plaintiff's allegations focused on how defendant's intentional actions "injure[d] plaintiff's right to receive the 'fruits of the contract'").

Taking these allegations as true, Defendant's proposed counterclaim for breach of the implied covenant of good faith and fair dealing is not futile. *See White Plains Aviation Partners, LLC v. County of Westchester*, No. 21 CV 5312 (VB), 2022 WL 743434, at *5 (S.D.N.Y. Mar. 11, 2022) (concluding the implied covenant of good faith and fair dealing claim survived a motion to dismiss where the plaintiff alleged that defendant engaged in bad faith motivations which deprived plaintiff of the benefits bargained for and covered under the parties' lease agreement); *see also Philip Morris Capital Corp. v. National Railroad Passenger Corp.*, No. 19-CV-10378 (JMF), 2021 WL 797671, at *7 (S.D.N.Y. Feb. 26, 2021) (holding plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing survived a 12(b)(6) motion to dismiss because the allegations that defendant's intentional acts frustrated the rights afforded to plaintiff under the lease, taken as true, showed injury to the right of plaintiff to receive the fruits of the lease).    Indeed, Plaintiff's argument that the counterclaim is futile because there is no provision in the Agreement governing the type of implied promise that Defendant cites to nor does the Agreement mandate Plaintiff to terminate the lease upon an Event of Default (*see* ECF No. 34 at pp. 7-9, 12) misses the point.  If there were an express provision, then the claim for breach of the implied covenant of good faith and fair dealing would fail.  The gravamen of a breach of the implied covenant is that the offending party did something or took steps to

somehow frustrate the other parties performance under the agreement.  And that is what is alleged here.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Amend (ECF No. 31) is **GRANTED**.

Defendant shall file its Amended Answer on ECF by **March 4, 2026**.

Dated:  Central Islip, New York.
          February 26, 2026

**SO ORDERED**,

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge